FILED

May 4 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0108

DA 15-0108

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 101

ROBIN C. JACOBSON and
KATHLEEN S. JACOBSON,

      Plaintiffs and Appellees,

  v.

BAYVIEW LOAN SERVICING, LLC,
and CHARLES J. PETERSON, Trustee,

      Defendants and Appellants.

APPEAL FROM:   District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 10-58
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Maxon R. Davis, Derek J. Oestreicher, Davis, Hatley, Haffeman
& Tighe, P.C., Great Falls, Montana

      For Appellees:

          Raymond G. Kuntz, Attorney at Law, Red Lodge, Montana

Submitted on Briefs:  December 9, 2015

Decided:  May 4, 2016

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Bayview Loan Servicing, LLC, ("Bayview") and Charles J. Peterson, Trustee, ("Peterson") appeal from the Order of the Montana Twenty-Second Judicial District granting judgment for Robin C. Jacobson and Kathleen S. Jacobson ("Jacobsons"). The District Court determined that Bayview violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692a-p, and the Montana Consumer Protection Act ("MCPA"), Title 30, Chapter 14, part 1, MCA. The District Court also awarded damages in the amount of $226,408.14 and attorney fees in the amount of $109,108.50 to the Jacobsons. The Jacobsons also prevailed on two post-trial motions for additional relief and the District Court awarded the Jacobsons an additional $60,000.00 in damages and $31,020.00 in attorney fees. We affirm.

## ISSUES

¶2    Appellant raises several issues on appeal, which we address as follows:

1. *Whether the District Court erred in determining that Bayview violated the FDCPA.*

2. *Whether the District Court erred in determining that Bayview violated the MCPA.*

3. *Whether the District Court erred in awarding damages to the Jacobsons.*

4. *Whether this Court should award costs and fees to the Jacobsons on appeal.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In October 2007, the Jacobsons borrowed money and purchased a home and land on Elbow Creek Road in Carbon County, Montana. They executed a Promissory Note

and Trust Indenture in the amount of $391,400.00 to secure the loan. The original lender and servicer on the loan was CitiMortgage, Inc. and the "nominee" beneficiary of the Trust Indenture was Mortgage Electronic Registration Systems, Inc. ("MERS"). The 2008 economic crisis brought negative financial impacts to Robin's business as a home builder. As a result, the Jacobsons missed at least one mortgage payment in December 2008. CitiMortgage worked with the Jacobsons by entering into an extension agreement to defer the delinquent payment and interest to the end of the loan. On March 7, 2009, CitiMortgage transferred the loan servicing duties to Bayview Loan Servicing, LLC.

¶4   On March 24, 2009, Bayview sent the Jacobsons a default letter demanding payment of all past due amounts within 30 days or the loan would be accelerated with the entire obligation due and payable, along with the commencement of foreclosure proceedings. The letter further advised that once the loan was accelerated, it could be reinstated if all past due installments and late charges were paid at least 5 days before the scheduled foreclosure sale.

¶5   Both the Trust Indenture and the Promissory Note signed by the Jacobsons provide rules for notice when the borrower is delinquent on payments or in default. Section 22(c) of the Trust Indenture provides:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 [transfer of property] unless Applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure

3

the default on or before the date specified in the notice may result in acceleration. . . .

> If the default is not cured on or before the *date specified in the notice*, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. (Emphasis added).

With regard to the Promissory Note, Section 6(c) states:

> Notice of Default
> If I am in default, the Note Holder may send a written notice telling me that if I do not pay the overdue amount *by a certain date*, the note holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. *That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means*. (Emphasis added.)

¶6 As part of its efforts to collect payment from the Jacobsons, Bayview sent the aforementioned default letter but did not send a notice of acceleration with a "date specified" or "certain date" by "which the default must be cured" subsequent to the default letter of March 24 as required by the Promissory Note. (If the default letter was meant to be the notice, it did not conform to the requirements of the Promissory Note because it failed to give the full 30 days and failed to specify the "certain date.")

¶7 The Jacobsons made a payment on their loan on April 30, but Bayview resisted acceptance of that payment. A Bayview representative told the Jacobsons to stop making payments on their loan in May 2009, advising them that this would help them qualify for a loan modification. Bayview represented to the Jacobsons in May 2009 that it would

4

process a loan modification for them, but did not forward an application for the HAMP[1] program until January 2011. Instead, Bayview reinitiated foreclosure proceedings, sending a second default letter on May 4, 2009, containing language identical to the March foreclosure letter. Similar to the March foreclosure letter, Bayview failed to send a notice of acceleration and provide a "certain date" for cure.

¶8 On July 21, 2009, as part of the first foreclosure proceeding, Bayview filed, through Peterson, three documents with the clerk and recorder. The documents were an "Assignment of Deed of Trust," the "Substitution of Trustee," and a "Notice of Trustee's Sale." The "Assignment of Deed of Trust" assigned the deed of trust from MERS to CitiMortgage. The "Substitution of Trustee" substituted Peterson as trustee in the place of the original trustee, First American Title. Bayview also filed a "Notice of Trustee's Sale," seeking to exercise the power of sale under the trust and setting a sale of the Jacobsons property for November 23, 2009. In the Notice of Trustee's Sale, Bayview and Peterson identified Bayview as the beneficiary under the Trust Indenture, when Bayview has never been the beneficiary of the Trust Indenture. The Notice of Trustee's Sale states in bold letters at the bottom of page 2 "THIS IS AN ATTEMPT TO COLLECT A DEBT."

---

[1] The federal Home Affordable Modification Program ("HAMP") "is intended to help homeowners in default or at immediate risk of default on their home loans by modifying their monthly payments to affordable levels. The program requires participating loan servicers to execute a servicer participation agreement and service eligible loans according to a uniform modification process. The process begins with a Trial Period Plan, under which the homeowner makes reduced payments for three months, while the loan servicer verifies income and other eligibility information. At the end of the trial period, if the homeowner has successfully made the trial payments and if eligibility has been verified, the modification is made permanent." *Morrow v. Bank of Am., N.A.*, 2014 MT 117, ¶ 11, 375 Mont. 38, 324 P.3d 1167.

¶9     In September 2009, Bayview informed the Jacobsons that they were not qualified for HAMP, even though the Jacobsons were never given an application for modification under the program.  At this point, according to the record, the Jacobsons complained to the Better Business Bureau because Bayview was "offering" modification while simultaneously pursuing foreclosure against them.  The Better Business Bureau apparently contacted Bayview, because Bayview responded by cancelling the trustee's sale scheduled for November 2009 and offering a loan modification.  Bayview then offered to lower the interest rate from 9.5% to 7.5% and extend the term of the loan out to 480 months.  The Jacobsons rejected the offer.  The Jacobsons then complained about Bayview's practices to U.S. Senator Jon Tester.  In a conference call with the Senator's office, Bayview, and the Jacobsons, Bayview made a second offer:  offering to dismiss the foreclosure action, waive the late charges, remove the negative credit reporting, dismiss legal fees and costs, and reduce the interest rate to 7.5%, if the loan was brought current.  The Jacobsons accepted this offer, but Bayview refused to put the offer in writing.  As a result, no agreement was finalized between the parties.

¶10    In December 2009, Bayview once again sent the Jacobsons "notice of default" letters.  These letters again failed to provide a date for cure under § 22 of the Trust Indenture and failed to grant the Jacobsons the ability to cure within the 5 days prior to the date set for sale.  Bayview also failed to send the required acceleration notice subsequent to the default letter.

¶11 In January 2010, CitiMortgage, the true beneficiary of the loan, executed a power of attorney, effective January 14, 2010, naming Bayview as its attorney-in-fact, but the document did not ratify the past actions of Bayview. On February 5, 2010, Peterson executed a second Notice of Trustee's Sale setting a sale date of June 15, 2010. This second notice also erroneously identified Bayview Loan Servicing as the beneficiary. On March 9, 2010, Bayview assigned the Trust Indenture to U.S. Bank as trustee, and then assigned it again to another entity identified as "CBO-6 REO Corp." Bayview represented that it was acting as attorney-in-fact for U.S. Bank for the purposes of this second assignment when it had no such authority. Bayview subsequently executed a false notarization of the assignment of the Trust Indenture to CBO-6 REO. Corp. CBO-6 REO Corp. did not exist on March 9 when Bayview purported to assign the Jacobsons' Trust Indenture to that entity. Bayview claimed that it meant to assign the Trust Indenture to "CBO-6 Corp." and that the "REO" was a typographical error. Nevertheless, CBO-6 Corp. was not formed until June 3, 2010, three months after the alleged "typographical error" assignment on March 9.

¶12 On March 23, 2010, Bayview informed the Jacobsons that it was now servicing their loan on behalf of U.S. Bank, with knowledge that U.S. Bank was not the beneficiary. Bayview falsely represented that CBO-6 REO Corp. existed and that the Jacobsons' loan was transferred to the entity on June 10, 2010. Bayview also misrepresented that it was servicing the loan on behalf of CBO-6 REO Corp. and that the non-existent entity was the Jacobsons' creditor. Bayview did not record the March 9,

7

2010 assignment of the Trust Indenture until September 21, 2010. When it did record, the assignment from U.S. Bank to CBO-6 Corp. was still an assignment to a nonexistent entity. As a result of these assignments, Bayview acted from March 9, 2010, to July 26, 2012, on behalf of beneficiaries that did not exist and had no interest in the Jacobsons' loan.

¶13 The Jacobsons filed this action on June 9, 2010, to enjoin the sale of their house at the June 15, 2010 trustee's sale. The District Court issued an Order to cancel the trustee's sale set for June 15, 2010. Subsequently, the Jacobsons amended their complaint to add FDCPA and MCPA claims. Bayview answered the Jacobsons' complaint on November 8, 2010. After the case was filed, Bayview contacted the Jacobsons, instead of their counsel, in June 2011, January 2011, February 2011, and July 2013.

¶14 Bayview moved for summary judgment in June 2012, asserting that it was the current beneficiary of the deed of trust, and had the authority to foreclose. The court set a hearing for September 19, 2012, on the motion for summary judgment. After changes in counsel and numerous motions, including a second summary judgment motion by Bayview, the court held a summary judgment hearing on August 7, 2013. The court denied Bayview's motion for summary judgment at the hearing. A bench trial was held on November 21 and 22, 2013, at which both parties presented exhibits and witness testimony. On March 10, 2014, the District Court issued its Findings of Fact, Conclusions of Law, and Order. The court determined that Bayview engaged in deceit,

negligent misrepresentation, and intentional violations of the FDCPA and the MCPA. The court awarded money damages under the FDCPA and the MCPA to the Jacobsons including emotional distress damages and statutory damages totaling $226,408.14. The court awarded the Jacobsons their costs and attorney fees in the case of $109,108.50.

¶15 After the trial, the Jacobsons filed a Motion for Additional Damages, Equitable Relief and Sanctions because Bayview contacted them while they were still represented by counsel, to notify them that Bayview was adding $33,696.00 to their loan for attorney fees and expenses related to the November trial. On August 20, 2014, the court held a hearing and determined that Bayview's attempts to collect their trial-related attorney fees and costs from the Jacobsons were in violation of the FDCPA, the MCPA, and the District Court's Order in the case prohibiting debt collection by Bayview during the pendency of the action. Accordingly, the court imposed an additional $50,000.00 of damages under § 30-14-133(1), MCA, to "further the remedial purposes of the Act."

¶16 On the same day as the August 20, 2014 hearing, Bayview once again sent additional correspondence to the Jacobsons. The letter was a mortgage statement which included a $13,565.84 bill for attorney fees added to their mortgage. The Jacobsons filed a Motion for Contempt and Bayview responded that it was deliberately charging the Jacobsons for Bayview's attorney fees and adding those to their mortgage. The District Court held a hearing on the motion on October 28, 2014, at which Bayview continued to assert its claims for attorney fees and other costs even while it could not produce any authority for this claim. The District Court issued additional Findings of Fact,

9

Conclusions of Law, and Order on December 10, 2014, regarding the second violation of the Order in the case. The court held:

1. Bayview is in contempt of the District Court, but may purge its contempt by strict future compliance with the Court's orders.

2. Bayview should pay Jacobsons attorney fees and costs incurred in bringing the motions. Bayview should pay $10,000.00 to aid in deterring Bayview's unlawful conduct.

¶17 Two more Orders were entered in the case in regard to the attorney fees and costs. The District Court determined:

1. Jacobsons are awarded $17,580.00 against Bayview and Peterson for the first violation of the Order as determined by the District Court on August 20, 2014.

2. Jacobsons are awarded $13,440.00 against Bayview and Peterson for the second violation of the Order as determined by the District Court on December 10, 2014.

¶18 Bayview appeals from the District Court's Orders in this case, including the subsequent orders related to Bayview's violations of the original order. Bayview does not appeal the attorney fees awarded pursuant to the Orders.

**STANDARD OF REVIEW**

¶19 This Court will affirm the factual findings of a district court sitting without a jury unless those findings are clearly erroneous. *Pedersen v. Ziehl*, 2013 MT 306, ¶ 10, 372 Mont. 223, 311 P.3d 765 (citing M. R. Civ. P. 52(a)(6); *Steiger v. Brown*, 2007 MT 29, ¶ 16, 336 Mont. 29, 152 P.3d 705). "A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite

10

and firm conviction that a mistake has been committed." *Pedersen*, ¶ 10 (citations omitted). To determine whether substantial credible evidence supports the district court's findings, we review the evidence in the light most favorable to the prevailing party. *Pedersen*, ¶ 10 (citation omitted). We review a district court's conclusions of law for correctness. *Public Lands Access Ass'n v. Bd. of Co. Comm'rs*, 2014 MT 10, ¶ 14, 373 Mont. 277, 321 P.3d 38.

## DISCUSSION

¶20    *1. Whether the District Court erred in determining that Bayview violated the FDCPA.*

¶21    The District Court made numerous determinations under the FDCPA, all of which are contested by Bayview on appeal. The court found that Bayview was in violation of the FDCPA for the following reasons: it engaged in FDCPA collection activity; it told the Jacobsons to stop making payments and then commenced foreclosure; it informed the Jacobsons it could not reinstate their loan within 5 days prior to the foreclosure sale; it failed to provide a date for cure of the default; it wrongfully (under § 71-1-306(2), MCA) appointed Peterson as trustee; it attempted to foreclose the property with a defective trustee; it falsely represented that it held the beneficial interest as servicer; it falsely promised to modify the loan in the Jacobsons favor; it falsely informed the Jacobsons they were not qualified for the HAMP program; it falsely notarized the assignment of the Trust Indenture to a corporation that did not exist; and falsely recorded the assignment to a fictitious creditor without authority; it made false representations in discovery by providing false answers and withholding documents; it contacted the Jacobsons while

11

they were represented by counsel; and it failed to comply with the requirements for default procedure in the Trust Indenture.

¶22 On appeal, Bayview argues that its conduct and communications with the Jacobsons do not constitute violations of the FDCPA or the MCPA and are insufficient to justify the damages awarded to the Jacobsons. Bayview's counsel argues that because no foreclosure sale took place, no harm has been done, and regardless, conduct related to foreclosure proceedings is not an attempt to collect a debt and is outside the scope of the FDCPA and MCPA.

¶23 The Jacobsons argue that Bayview is a debt collector subject to the FDCPA. They assert that Bayview's claim to be exempt from the FDCPA is raised for the first time on appeal. They further contend that Bayview and Peterson's practices are the type of abusive conduct the FDCPA and MCPA were enacted to remedy. They support the District Court's conclusions that Bayview's actions were serious, material violations of the law. Because the District Court made specific findings and conclusions regarding Bayview's violations of the FDCPA and MCPA, we consolidate and review the conclusions with the parties' arguments below. First, we address the Jacobsons' argument that Bayview is changing its legal theory on appeal. Next, we review Bayview's violations of the FDCPA including the loan modification misrepresentations, foreclosure rights misrepresentations, beneficiary status misrepresentations, improper contact with a represented party, and the false assignments of the loan.

**Change in Legal Theory on Appeal**

¶24    On appeal, Bayview reframes its argument regarding the FDCPA. It argues the FDCPA is inapplicable to Bayview because its actions—conduct related to foreclosure proceedings by the originator of the loan—are not debt collection activity under the FDCPA. This Court generally does not "address issues raised for the first time on appeal, or a party's change in legal theory" from that argued at the district court. *Vader v. Fleetwood Enterprises, Inc.*, 2009 MT 6, ¶ 37, 348 Mont. 344, 201 P.3d 139. The District Court determined that "Bayview and Peterson are debt collectors" and supported the conclusion by detailing Bayview's debt collection efforts against the Jacobsons. The District Court also noted in its Order that "[n]either Bayview nor Peterson has alleged any affirmative defenses under the FDCPA, and neither has argued that they are not debt collectors as defined by the FDCPA." Bayview seeks to avoid the effect of these conclusions by arguing a new theory on appeal. This theory was not offered to the District Court, the District Court was not given the opportunity to weigh these arguments, and we decline to address them on appeal. Instead, this Court will address the merits of the arguments as they were made to the District Court.

**Fair Debt Collection Practices Act (FDCPA)**

¶25    The FDCPA is a strict liability statute which specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information regarding a consumer." 15 U.S.C. § 1692e(10). The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that

those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 591 (6th Cir. 2009) (quoting 15 U.S.C. § 1692(e)).

¶26 To assess whether particular conduct violates the FDCPA, courts use the "least sophisticated debtor" standard. *See Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988). This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2nd Cir. 1993).

¶27 When applying the "least sophisticated consumer" standard, the misleading statement must also be materially false or misleading to violate FDCPA 15 U.S.C. § 1692e. *Miller* at 596-97. "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012).

¶28 The District Court concluded that Bayview committed numerous violations using false representations and unfair and deceptive practices to collect against the Jacobsons.

**Loan Modification**

¶29 The District Court found that Bayview's authorized representatives told the Jacobsons to stop making payments on their loan in May 2009 under the premise that it would help them get a loan modification. Bayview also advised the Jacobsons that they

14

would not qualify for a HAMP modification without actually reviewing a HAMP application submitted by the Jacobsons. Then, instead of assisting with a loan modification, Bayview commenced foreclosure proceedings against the Jacobsons. When the Jacobsons subsequently sought outside help, first from the Better Business Bureau and then from Senator Tester's office, Bayview finally engaged in "in-house" loan modification negotiations. Bayview offered the first loan modification and the Jacobsons rejected it because the terms were onerous. In the second negotiation (with assistance from Senator Tester's office), Bayview offered an acceptable loan modification but refused to provide the offer in writing, resulting in its rejection by the Jacobsons. The District Court found that Bayview's false offers and promises to modify constituted a false representation in connection with the collection of a debt and a deceptive practice in the conduct of trade or commerce in violation of 15 U.S.C. § 1692e and § 30-14-103, MCA.

¶30 Bayview argues that the District Court "completely misstates" the record regarding negotiations between the parties, and that loan modification procedures were online for the Jacobsons to access. In other words, Bayview did not fail to send a HAMP application to the Jacobsons; the Jacobsons failed to pursue the option. Bayview asserts that the loan modification negotiations were fair and the Jacobsons rejected the offer out of hand. Finally, however, Bayview admits that its representative advised the Jacobsons not to make mortgage payments.

¶31    The Jacobsons support the District Court's findings regarding the loan modification citing substantial evidence relied upon by the court. They argue that evidence regarding the loan modifications was offered at trial, and the court made a proper determination that Bayview made false representations that misled them in regard to their modification options.

¶32    From the outset, we see no clear error in the District Court's conclusions regarding the loan modifications; the court relies on credible evidence. Bayview's arguments offered here were thoroughly weighed by the District Court. The court found Robin Jacobson's testimony regarding Bayview's questionable HAMP application procedures and subsequent negotiations for modification to be reliable, and gave it the greater weight in light of the false statements made by Bayview's witnesses to the court. The District Court gave proper weight to testimony based on its evaluation of the witnesses and supported its conclusions with substantial evidence. Furthermore, Bayview advised the Jacobsons to stop making payments on their home while beginning foreclosure and negotiating in bad faith regarding in-house loan modification. These false representations caused the Jacobsons to question how they could modify or cure their default, and whether they could trust any representation by Bayview regarding their loan. We conclude the District Court relied on substantial evidence and properly found the false representations regarding the loan modification were materially misleading and violations of 15 U.S.C. § 1692(e) and § 30-14-103, MCA.

16

**Foreclosure—False Representation of Debtor's Rights**

¶33 The District Court found that Bayview misrepresented the Jacobsons' rights regarding the reinstatement of their loan when it misinformed the Jacobsons regarding their ability to cure and reinstate their loan within 5 days preceding the foreclosure sale in its letters to the Jacobsons. The court determined that this was an unfair or deceptive practice in violation of A.R.M. § 23.19.101(1)(l) and was a false representation of the debtor's rights in violation of 15 U.S.C. § 1692e(10). The District Court also found that Bayview improperly advised the Jacobsons regarding their contractual rights by demanding cure of the default in less than 30 days instead of the full 30 days, and failed to give a specific date for cure provided by the Trust Indenture § 22(c). The District Court determined these violations were false representations of the Jacobsons' rights in violation of 15 U.S.C. § 1692e(10) and constituted unfair practices in violation of 15 U.S.C. § 1692f and § 30-14-103, MCA.

¶34 Bayview does not deny these errors. Instead, it argues the errors are immaterial because there was never a sale or foreclosure, and that the violations are only technical and not the type of violation that the FDCPA intends to punish. The Jacobsons argue that these are exactly the type of violations the FDCPA intends to prevent.

¶35 We find no error in the District Court's interpretation or perception of the evidence. Bayview failed to properly notify the Jacobsons regarding the timing of their right to cure. Bayview's argument does not hold up when compared to the statute. The FDCPA provides that false representations connected to debt collection and "*attempts* to

17

collect any debt" are violations of the law. 15 U.S.C. § 1692e(10) (emphasis added). Bayview's misrepresentations of the Jacobsons' rights to cure the default pertained to "attempts" to collect on the loan. Bayview's misrepresentations regarding the time for cure changed the contractual and statutory rights provided to the Jacobsons by cutting short the time available for cure. Further, no specific date for cure was provided to the Jacobsons, materially affecting their rights. The District Court correctly concluded Bayview's false representations about the Jacobsons' legal rights are a violation of 15 U.S.C. § 1692e(10) and under 15 U.S.C. § 1692f are an unfair practice; the FDCPA violations also constitute violations of § 30-14-103, MCA.

**Beneficiary Status**

¶36 The District Court found that Bayview was never the beneficiary on the Jacobsons' loan. Accordingly, the court concluded that Bayview misrepresented itself as the beneficiary in both notices of trustee's sale when Bayview stated: "[t]he beneficial interest is currently held by Bayview Loan Servicing, LLC" as servicer for CitiMortgage. The District Court held this constituted a false representation in connection with the collection of a debt and a deceptive practice in the conduct of trade or commerce in violation of 15 U.S.C. § 1692e and § 30-14-103, MCA. Bayview admits the misrepresentation but argues the District Court erred in its conclusion because the misrepresentation is irrelevant and immaterial to the Jacobsons' default.

¶37 We conclude the misrepresentation was material because the Jacobsons were misled regarding the identity of the beneficiary, which directly affected their ability to

18

resolve the debt. In addition, Bayview created a false corporation to hold the note, made false representations regarding the note, and made an improper beneficiary designation; the result is materially misleading to the consumer. Given the wide range of misrepresentations, the "least sophisticated consumer" would clearly have difficulty ascertaining who owns the loan, and who can foreclose or resolve the loan. Bayview's misrepresentation regarding the beneficiary of the Trust Indenture was a material misrepresentation and the District Court properly concluded it was a deceptive practice in violation of the FDCPA and the MCPA.

**Bayview's Improper Communications**

¶38 The FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney . . . ." 15 U.S.C. § 1692c(a)(2). The District Court determined that Bayview knew the Jacobsons were represented by counsel on June 9, 2010. The District Court found that at least four letters (June 28, 2010, January 18, 2011, February 1, 2011, and July 1, 2013) sent to the Jacobsons after that date were direct communications to collect a debt in violation of the statute. Bayview argues that these communications were not violations of 15 U.S.C. § 1692c because they were not attempts to collect a debt. However, the argument fails because the letters state "[t]his letter is an attempt to collect a debt . . . ." Bayview knew the Jacobsons were represented by counsel but persisted in sending debt collection notices in violation of the statute. The District Court's conclusions regarding Bayview's direct communications with the Jacobsons are

19

properly based on substantial evidence. The District Court did not err when it determined Bayview improperly contacted the Jacobsons.

**False Assignments**

¶39 The District Court found numerous FDCPA violations pertaining to Bayview's assignments of the Jacobsons' Trust Indenture. The court sifted through a confusing series of assignments finding the following: Bayview falsely told the Jacobsons that U.S. Bank was the "current" beneficiary of the Trust Indenture and Bayview was servicing on U.S. Bank's behalf; Bayview then falsely represented that CBO-6 REO Corp. existed and that the loan was transferred to the entity on June 10, 2010; Bayview also falsely represented that it was servicing the loan on behalf of the non-existent entity; Bayview recorded the false assignment without authority (because it was not the beneficiary and was not attorney-in-fact for the beneficiary), to a non-existent entity, CBO-6 REO Corp. It did not stop there. Bayview then misinformed the District Court that Bayview was the current beneficiary of the loan when it was not. Bayview also provided false discovery answers claiming to have no communications with either U.S. Bank or CBO-6 REO Corp. and Bayview representative Gerardo Trueba admitted at trial that he prepared false discovery responses regarding the misrepresentations. The District Court concluded that this long series of Bayview's actions was in violation of 15 U.S.C. § 1692e and § 30-14-103, MCA.

¶40 Bayview argues that the District Court's conclusions regarding Bayview's false assignments are erroneous. It argues that Bayview's foreclosure activity is not debt

collection, that the false assignments do not give rise to an actionable FDCPA claim, and that it is not a violation of the FDCPA to initiate foreclosure before a note and mortgage assignment is completed so long as it occurs prior to final judgment. The Jacobsons argue that Bayview's misrepresentations of the identity of the original creditor are materially misleading and violations of the FDCPA.

¶41    The core of Bayview's argument is that it can assign the note and mortgage so long as it occurs prior to final judgment on the foreclosure. To support this argument, Bayview cites *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 931 (N.D. Ohio 2009), a case in which the court found no violation of the FDCPA when the bank (DBNTC) falsely asserted it was the owner and holder of the notes and mortgages. There, the court determined the claim failed because it was not misleading or deceptive because the bank, which was properly the mortgage holder, could assign the loan so long as the process was complete prior to final judgment in the foreclosure. Bayview relies on the court's conclusion that "simple inability to prove present debt ownership at the time a collection is filed does not constitute a FDCPA violation." *Whittiker* at 929.

¶42    Bayview's actions here are easily distinguished from the actions in *Whittiker*. Bayview's misdeeds go far beyond a "simple inability to prove ownership" of the debt. *Whittiker* at 929. Bayview made numerous misrepresentations as part of the false assignments of the loan. It falsely represented that it was "attorney-in-fact" for U.S. Bank when it assigned the Trust Indenture to "CBO-6 REO Corp." when it did not exist. The assignment to the non-existent entity was made with a false notarization by Bayview

21

and its employee. From there, Bayview falsely told the Jacobsons that U.S. Bank was the current beneficiary, and falsely stated that it was servicing the loan for U.S. Bank. U.S. Bank was never the beneficiary. Bayview never had authority to assign the loan because it never was the beneficiary. Bayview misinformed the court that it was the beneficiary of the loan. Bayview also admitted to providing false discovery answers. Finally, Bayview recorded the assignment under false authority to a fictitious creditor.

¶43 Bayview's arguments fall short because the sum of its misrepresentations is not "simple." Instead, Bayview's activities are seriously misleading misrepresentations regarding the Jacobsons' loan and its status. The misrepresentations are material because they would mislead the "least sophisticated consumer" due to the confusion regarding who owns the loan and who possesses authority to impose requirements on the Jacobsons regarding payment of the loan. Individually, and taken as a whole, the false misrepresentations and conduct misled the Jacobsons regarding the status of their loan and its true owner. The District Court did not err; it properly concluded that Bayview's false assignments and surrounding misrepresentations and conduct were unfair and deceptive practices in violation of 15 U.S.C. § 1692e, f, and the MCPA.

¶44 The District Court's factual findings pertaining to Bayview's violations of the FDCPA are supported by substantial evidence. Bayview repeatedly violated the FDCPA and MCPA, and violated the contractual requirements of the Trust Indenture. Bayview's arguments that the violations are immaterial and irrelevant fail to account for intentional violations of the law. Bayview's unfair and deceptive practices against the Jacobsons

cannot be tolerated as they are clear violations of the FDCPA and the MCPA. We conclude that the District Court made detailed and accurate conclusions of law under the FDCPA and accordingly, we affirm its decision with respect to the FDCPA claims.

¶45   *2. Whether the District Court erred in determining that Bayview violated the MCPA.*

¶46   The Montana Consumer Protection Act declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 30-14-103, MCA. In *Baird v. Norwest Bank*, we determined that the Montana Consumer Protection Act applies to "consumer loans by banks in the lending and collecting of such loans." 255 Mont. 317, 328, 843 P.2d 327, 334 (1992). This Court further determined that under the Montana Consumer Protection Act, "an unfair act or practice is one which offends established public policy and . . . is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 2009 MT 35, ¶ 31, 349 Mont. 197, 203 P.3d 759. In *Morrow*, we noted it is "an unfair or deceptive practice when a party 'states that a transaction involves rights, remedies or obligations that it does not involve.'" *Morrow*, ¶ 67 (citing Admin. R. M. 23.19.101(1)(l)). We further added that "[a] consumer may sue under the act if he or she has suffered 'any ascertainable loss of money or property' as the result of an unfair practice." *Morrow*, ¶ 67 (citing § 30-14-133, MCA).

¶47   Bayview disputes the District Court's determination that Bayview violated the Montana Consumer Protection Act. Bayview argues that MCPA claims must be established on "independent grounds" and that neither the Jacobsons, "nor the District

Court, cite any authority in the MCPA itself, or in any authority construing the MCPA, for the proposition that purported violations of the FDCPA are also violations of the MCPA." For its "independent grounds" argument, Bayview cites *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007).

¶48   In *Lamar*, the Sixth Circuit states, "the purpose of both acts [the FDCPA and OCSPA [Ohio Consumer Sales Practices Act]] is to prohibit both unfair and deceptive acts and *this court holds that any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of* [Ohio's OCSPA] *R.C. § 1345.02 and/or § 1345.03.*" *Lamar* at 513 (emphasis added). A cursory reading of the *Lamar* opinion establishes that Bayview misinterpreted the facts and law of *Lamar* when it concluded that violations of the OCSPA (a law substantially similar to Montana's MCPA) require "independent grounds" from the FDCPA. The OCSPA claims in the *Lamar* case failed because they relied entirely on the FDCPA claims, which the court determined were not substantiated by the plaintiffs. In this case, the FDCPA and MCPA claims rely on the same grounds, and we have determined that the FDCPA claims are valid; thus, the MCPA claims succeed on the same basis. We reiterate here and hold that it is well established that a violation of federal consumer law pursuant to the FDCPA can also constitute grounds for violation of Montana law pursuant to the MCPA. *See Morrow*, ¶¶ 67-69 (holding that HAMP claims under the FDCPA are violations sufficient to state claims under the MCPA and, more generally, both the FDCPA and MCPA apply to the "collection and servicing of loans"); *see also*, *Lamar* at 513.

¶49 On the merits, the District Court provided substantial evidence that Bayview's Action violated the MCPA. In *Morrow*, we held that instructing a borrower to default on a loan, giving conflicting representations regarding the borrower's status, all while causing the borrower's default to grow constitutes a practice "substantially injurious to consumers" in violation of the MCPA. *Morrow*, ¶¶ 67-69. Here, the District Court found that Bayview told the Jacobsons not to make payments, while at the same time commencing foreclosure. Bayview also violated provisions of the Trust Indenture § 22(c) and § 71-1-306(2), MCA. These violations are very similar to those addressed in *Morrow* and clearly constitute violations of Montana law while also in violation of the FDCPA.

¶50 In addition, Bayview violated Admin. R. M. 23.19.101(1)(l) when it failed to provide an option for cure of the default in the five days preceding the Trustee's sale. The result of this violation would be "substantially injurious" to the Jacobsons and falls well within unfair or deceptive practices prohibited by the MCPA. The District Court also found specific grounds for Peterson's liability, as he acted pursuant to an invalid Trustee substitution when he twice initiated foreclosure proceedings against the Jacobsons. The District Court properly concluded the action was a violation of § 71-1-306(2), MCA, and § 30-14-103, MCA. Finally, the court correctly concluded that Bayview's attempt to collect attorney fees and expenses post-trial against the Jacobsons was a clear violation of the FDCPA and the MCPA.

¶51 We conclude that the District Court's findings under the FDCPA regarding Bayview's actions establish state law grounds for violations of the MCPA. Further, we find no error in the District Court's conclusions because the findings are supported by substantial evidence demonstrating Bayview and Peterson's liability under the MCPA.

¶52 *3. Whether the District Court erred in awarding damages to the Jacobsons.*

¶53 Section 27-1-202, MCA, provides that "[e]very person who suffers detriment from the unlawful act or omission of another may recover . . . [damages]." Section 30-14-133(1), MCA, provides that "[t]he court may, in its discretion, award up to three times the actual damages sustained and may provide any other equitable relief that it considers necessary or proper." The MCPA provides this discretion to the courts "without imposing any particular criteria, to grant an award of treble damages if it finds that such an increase will further the purpose of the CPA." *Vader*, ¶ 47. A district court's damage determination is a factual finding this Court will uphold if the finding is supported by substantial evidence. *Watson v. West*, 2009 MT 342, ¶ 18, 353 Mont. 120, 218 P.3d 1227 (citing *Tractor & Equipment Co. v. Zerbe Bros.*, 2008 MT 449, ¶ 12, 348 Mont. 30, 199 P.3d 222). This Court will not overturn a district court's determination of damages unless it is clearly erroneous. *Watson*, ¶ 18 (citation omitted).

¶54 The District Court awarded $226,408.14 on the FDCPA and MCPA claims, which Bayview argues is not based on any injury sustained by the Jacobsons and is not supported by evidence that could be construed as a violation of the FDCPA. Specifically, the District Court awarded $172,615.20 of actual damages and $50,000.00 of additional

26

damages "for emotional distress suffered by the Jacobsons together with the deception, stonewalling, and utter disregard for their contractual and statutory rights that the Jacobsons have been forced to endure as a result of [Bayview's] conduct." The court also assessed statutory damages of $1,000.00 for each of the Jacobsons under 15 U.S.C. § 1692k(a)(2). The court awarded money damages, emotional distress damages, statutory damages, and additional damages for Bayview's post-trial actions under the MCPA, which we review individually.

**Damages**

¶55 The District Court concluded that because Bayview resisted payment and instructed the Jacobsons not to pay on their loan, the Jacobsons incurred damages resulting from Bayview's conduct, and those damages were the late charges and interest that Bayview assessed to the Jacobsons. To determine damages, the District Court used Bayview's February 5, 2010 "Notice of Trustee's Sale." The court calculated damages across a date range from the first defective notice of foreclosure on March 24, 2009, until the second day of trial on November 22, 2013. Thus, per the notice, this included $1,792.94 in late charges, plus the interest accrued since the first notice of default until the second day of trial, which was $101.30 interest per day multiplied by 1,704 days or $172,615.20.

¶56 Bayview argues that because the Jacobsons' house was never foreclosed and sold, its actions have not damaged the Jacobsons in any way, because no "actual damage" was sustained under the provisions of 15 U.S.C. § 1692k(a)(1) (stating that a debt collector

who fails to comply with the provisions of the FDCPA is liable to such person in an amount equal to that persons actual damages). Under Bayview's reasoning, a loan servicer could undertake any sort of action to collect debt so long as the loan does not actually foreclose. This logic fails because the FDCPA and the MCPA were enacted to stop unfair practices including false representations of the sort Bayview has used in this case. Furthermore, Bayview does not have to be successful in its debt collection actions; it is liable for false representations and unfair practices because it was "attempting" to collect debt. 15 U.S.C. § 1692e(10).

¶57 Here, in addition to its deception and unfair practices, Bayview imposed late charges and interest on the Jacobsons' loan, increasing the amount of their default. In *Morrow*, we determined that causing a consumer's default to grow would "constitute a practice substantially injurious to consumers." *Morrow*, ¶¶ 68-69. Here, Bayview instructed the Jacobsons to miss payments and default on their loan. That default led to subsequent misrepresentations by Bayview regarding the Jacobsons' rights, including their ability to cure the default. While Bayview was making misrepresentations to the Jacobsons and using unfair practices, it was simultaneously increasing the amount of their liability on their loan through late charges and interest. Similar to *Morrow*, this increase in the loan liability is substantially injurious to the Jacobsons. The District Court correctly found that the Jacobsons suffered a financial detriment because their loan liability was wrongfully increased as a result of Bayview's actions.

¶58    We find further support for this conclusion in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012).  The U.S. Seventh Circuit Court of Appeals determined that Wigod alleged recoverable pecuniary loss under the Illinois Consumer Protection Act as a result of unfair HAMP procedures by Wells Fargo.  *Wigod*, 673 F.3d at 575.  The court found Wigod's allegations that "she incurred costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit, never received a Modification Agreement, and lost her ability to receive incentive payments during the first five years of the modification" were sufficient to establish pecuniary loss. *Wigod*, 673 F.3d at 575.[2] The Jacobsons have suffered a pecuniary loss similar to that suffered by Wigod and accordingly, we conclude that the damages suffered by the Jacobsons are a financial detriment and the losses are properly considered actual damages by the District Court. We reject Bayview's contentions that the Jacobsons have suffered no financial detriment as a result of Bayview's conduct.  There is no question that the Jacobsons suffered a financial detriment as a result of Bayview's unfair practices and conduct.  We conclude

---

[2] We also note that the Seventh Circuit Court of Appeals included the following at endnote 14 of their opinion for additional support of this conclusion:  "In a number of third-generation HAMP cases, district courts have found that plaintiffs successfully pled claims under other states' analogous consumer fraud statutes."  *See*, e.g., *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 U.S. Dist. LEXIS 86077, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) ("The plaintiffs have alleged that CitiMortgage's misleading letters led to the following damages: damage to Mrs. Allen's credit score, emotional damages, and forgone alternative legal remedies to save their home.  Accordingly, at this stage, the plaintiffs have stated sufficiently an actual injury or loss as a result of a prohibited practice under [the Maryland Consumer Protection Act].");  *Stagikas v. Saxon Mortg. Services, Inc.*, 795 F. Supp. 2d 129, 137 (D. Mass. 2011) ("The complaint also alleges several injuries resulting from defendant's allegedly deceptive representations about plaintiff's HAMP eligibility, including increased interest on the debt, a negative impact on plaintiff's credit history, and the loss of other economic benefits of the loan modification.  That is enough to sustain a claim of injury under [the Massachusetts Consumer Protection Act].) (internal citation omitted)."  *Wigod*, 673 F.3d at 575, n.14.

that these injuries alleged under the FDCPA and MCPA find a proper remedy in actual damages.

¶59 We do not find error with the District Court's damage award because it is reasonable compensation for the substantial injury and financial detriment suffered by the Jacobsons. As noted above in ¶ 56, the court calculated damages from the date of the first defective notice of foreclosure on March 24, 2009, through the second day of trial on November 22, 2013. The interest charged totaled $172,615.20, and the late charges totaled $1,792.94. If Bayview was the mortgage holder in this case, we would direct that the late charges and interest that have accumulated on the mortgage balance since the date of the first defective notice of foreclosure be subtracted from the present mortgage balance. However, Bayview is merely the loan servicer; it does not hold the mortgage. In order that the Jacobsons have the funds necessary to pay down the mortgage balance by the amount of late charges and accumulated interest, we deem it appropriate to uphold this aspect of the District Court's damage award against Bayview. In addition, because we are remanding to the District Court for a hearing to determine attorney fees on appeal, the District Court should also take the opportunity on remand to assess any additional late charges and interest that have accumulated on the debt from November 22, 2013, through the date of the District Court's final order following remand.

**Emotional Distress Damages**

¶60 Under § 30-14-133(1), MCA, the District Court awarded $50,000.00 to the Jacobsons for emotional distress damages based on testimony from Robin Jacobson

"together" with damages for the deceit, stonewalling, and disregard for the Jacobsons rights. Bayview contests the award claiming the District Court speculated to obtain the amount of damages without testimony or evidence. The Jacobsons argue that substantial evidence establishes the damages inflicted by Bayview including the inability to determine the holder of their Promissory Note or the beneficiary of their Trust Indenture, and the consequent loss of ability to properly resolve the default.

¶61     Under § 30-14-133(1), MCA, the District Court is granted broad authority to award, in its discretion, "up to three times the actual damages sustained and *may provide any other equitable relief that it considers necessary or proper*." (Emphasis added.) Here, the District Court properly awarded damages under the MCPA based upon testimony regarding the emotional distress of the Jacobsons and on the sum of the damages "the Jacobsons were forced to endure" as a result of Bayview's misconduct. Robin Jacobson's testimony and the extensive record of Bayview's misdeeds are substantial evidence offered by the court to support the damages. Further, we note that under the FDCPA, witness testimony alone is sufficient to support an award for emotional distress damages with no requirement for substantial evidence to support the damages. *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003). We conclude it was well within the District Court's discretion to award these damages.

**Statutory Damages**

¶62     The District Court awarded statutory damages under 15 U.S.C. § 1692k(a)(2)(A) of $1,000.00 for each of the Jacobsons as individual plaintiffs in the case. Bayview

argues the damages are limited to $1,000.00 in any one action under the statute. The language of subsection 1692k(a)(2)(A) on its face dictates that a debt collector is liable for a single award of statutory damages per plaintiff per lawsuit. In this case, the District Court awarded a single award of $1,000.00 for each plaintiff in their lawsuit against Bayview. Each plaintiff has an individual stake in the lawsuit, and we conclude that the District Court properly awarded statutory damages to each of the Jacobsons.

**Post-Trial Communication Damages**

¶63 After trial, the District Court awarded damages under the MCPA of $50,000.00 on the first post-trial motion and $10,000.00 on the second post-trial motion when Bayview improperly contacted the Jacobsons about collections and attorney fees on two separate occasions. Bayview argues that the damages are awarded in error as they are not supported by "substantial credible" evidence. The Jacobsons accurately contend that Bayview fails to discuss or analyze the District Court's additional damage award as its briefing only raises but does not analyze the issue. Nonetheless, we will briefly address the issue on the merits.

¶64 Part of the inherent "remedial purpose" of the damage provisions of the MCPA is to deter inappropriate action against consumers by debt collectors, or in this case, loan servicing companies. *Vader*, ¶ 48. An award of damages may benefit the plaintiffs in a case, but its remedial nature also serves as notice to all that violations of the MCPA are consequential and will not be tolerated.

¶65     Here, the District Court issued two additional orders in the case. The August 20, 2014 Order was on a Motion for Additional Damages, Equitable Relief, and Sanctions sought by the Jacobsons because Bayview, after trial, directly contacted them to collect on the loan and attorney fees in violation of the Judgment in the case, the MCPA, and the FDCPA. The District Court found for the Jacobsons on the motion and ordered Bayview to pay $50,000.00 "to further the remedial purposes of the [MCPA]." The second Order was on a Motion for Contempt of Court by the Jacobsons after Bayview contacted them again for collection purposes and to inform them that it intended to charge the Jacobsons for Bayview's attorney fees related to the case. The District Court found that Bayview's actions violated the Small Tract Financing Act, the FDCPA, the MCPA, and the court's judgment in the case. The District Court awarded the Jacobsons an additional $10,000.00 as equitable relief under the MCPA.

¶66     The two damage awards are well within the court's discretion under § 30-14-133(1), MCA. The damages serve as a proper deterrent under the Act to stop Bayview's improper conduct and to "further the purpose of the [MCPA]" by providing warning to Bayview and other loan servicers that improper debt collection conduct will not be tolerated. *Vader*, ¶ 47. The damages are supported by substantial evidence and demonstrate a thorough, well-reasoned remedy fashioned by the court. We conclude that the District Court did not err in awarding damages to the Jacobsons.

¶67    *4. Whether this Court should award costs and fees to the Jacobsons on appeal.*

¶68    The Jacobsons contend that attorney fees are available for consumers who successfully defend a verdict in their favor under the MCPA. *Vader* ¶¶ 52-53. They also argue that the Ninth Circuit Court of Appeals has held that a plaintiff who successfully defends an FDCPA action is entitled to attorney fees and costs on appeal. *Joe v. Payco-General Am. Credits.*, 34 F.3d 1072 (9th Cir. 1994). The Jacobsons request that we remand this matter to the District Court for a determination of reasonable attorney fees and costs incurred on appeal.

¶69    We have held that, under the MCPA, attorney fees and costs are allowed upon successful defense of a verdict on appeal. *Vader*, ¶¶ 50-53. The MCPA states, "[i]n any action brought under this [Act] the court may award the prevailing party reasonable attorney fees incurred in prosecuting or defending the action." Section 30-14-133(3), MCA; *Vader*, ¶ 52. In this action, the Jacobsons are entitled to fees and costs because they necessarily defended the verdict in their favor. Bayview has not objected to an award of attorney fees and costs on appeal. Accordingly, we remand this matter to the District Court to determine a reasonable award of attorney fees incurred by the Jacobsons in the defense of their claims on appeal.

## CONCLUSION

¶70    The District Court did not err when it determined that Bayview violated the FDCPA when it made false representations to the Jacobsons regarding the Trust Indenture and engaged in unfair trade practices to collect the debt. Bayview violated

34

§ 30-14-103, MCA, because any violation of the FDCPA corresponds with an unfair and deceptive act or practice in violation of the Act. The District Court properly determined damages incurred by the Jacobsons as a result of Bayview's actions and supported those conclusions with substantial evidence. We conclude that the Jacobsons are entitled to their attorney fees and costs on appeal because they have necessarily defended the verdict in their favor under § 30-14-133(3), MCA.

¶71　　Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Jim Rice, concurring.

¶72　　I concur in the Court's opinion.

¶73　　The Court holds that Bayview committed numerous "clear violations of the FDCPA," Opinion, ¶ 44, and analyzes those violations extensively under Issue 1. I think it bears repeating that, for procedural reasons, we have not undertaken consideration of Bayview's argument that the FDCPA does not apply, as a matter of law, to foreclosure of secured interests. Thus, the Court's holdings on that issue rest on the assumption that the Act applies, which is how we have determined the matter was litigated before the District Court. If properly raised and preserved, this would be a threshold issue about which, as

35

the parties note, there has been spirited debate in the federal courts.  *See Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 887 (D. Minn. 2008) (FDCPA's "definition of 'debt collector' clearly reflects Congress's intent to distinguish between 'the collection of any debts' and 'the enforcement of security interests.'") (citation omitted); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 363 (D. Conn. 2012) ("a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA" and collecting cases); *cf. Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015) ("Nowhere does the FDCPA exclude foreclosure actions from its reach.  On the contrary, foreclosure meets the broad definition of 'debt collection' under the FDCPA . . . .") (citation omitted).  Consequently, resolution of this threshold issue is left for another day.

/S/ JIM RICE