Justice Ingrid Gustafson delivered the Opinion of the Court.
***363 ¶ 1 Sinda Puryer (Puryer) appeals a May 25, 2017 order of the Eleventh Judicial District Court, Flathead County, dismissing her Amended Complaint against HSBC BANK USA, National Association as Trustee for the holders of Ace Securities Corp. Home Equity Loan Trust, Asset Backed Pass-Through Certificates, series 2006-CW1, The registered holders of Ace Securities Corp. Home Equity Loan Trust, Series 2006-CW1, Ace Securities Corp. Home Equity Loan Trust, Series 2006-CW1, Asset Backed Pass-through Certificates, series 2006-CW1, HSBC Mortgage Corporation (USA), and Nationstar Mortgage LLC (collectively, Lenders).
¶ 2 We restate the issue on appeal as follows:
Did the District Court err by granting Lenders' Motion to Dismiss pursuant to M. R. Civ. P. 12(b)(6) ?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 On March 27, 2006, Puryer obtained a $285,750 loan (the Loan) on real property located at 244 Wintercrest Drive in Kalispell, Montana. The Loan was secured by a Deed of Trust on the property from America's *108 Wholesale Lender. The Deed of Trust identified Puryer as the borrower, America's Wholesale Lender as the original lender, Charles J. Peterson as the Trustee, and Mortgage Electronic Registration Systems, Inc. as the "nominee for Lender and Lender's successors and assigns ... a beneficiary under this Security Instrument." On December 3, 2009, the Deed of Trust was assigned to HSBC Bank USA as trustee for the holders of Ace Securities Corp. Home Equity Loan Trust, Asset Backed Pass-Through Certificates, series 2006-CW1. On December 12, 2011, the Deed of Trust was assigned to Bank of America, N.A. On October 15, 2012, the Deed of Trust was assigned back to HSBC.
¶ 4 Due to financial difficulties, Puryer contacted Bank of America for assistance to modify her monthly mortgage payments. Puryer alleged Bank of America told her to stop making her monthly mortgage payment to qualify her for the Home Affordable Modification Program ***364 (HAMP).[1] Puryer alleged based on this advice she stopped making her monthly mortgage payments; however, Puryer never qualified for the HAMP. Her last mortgage payment was on October 1, 2007. Puryer has not made any payments on the Loan since October 1, 2007, and she admits she defaulted on the Loan on November 1, 2007. However, she continues to reside on the property.
¶ 5 Since Puryer defaulted on the loan, she has received at least nine Notices of Sale. Puryer received the first Notice of Sale on July 10, 2008, and the last on July 5, 2016. The Notices of Sale contained similar language, which Puryer alleged accelerated all amounts due under the Loan and Deed of Trust. For example, the last Notice of Sale, issued on July 5, 2016, stated the following:
The beneficiary has declared a default in the terms of said Deed of Trust by failing to make the monthly payments due in the amount of $1,962.12, beginning November 1, 2007, and each month subsequent, which monthly installments would have been applied on the principal and interest due on said obligation and other charges against the property or loan. The total amount due on this obligation as of July 15, 2016 is $255,563.04 principal, interest at a rate of 8.35000% totaling $193,193.35, late charges in the amount of $2,164.80, escrow advances of $34,841.35, and other fees and expenses.
Each Notice of Sale was later cancelled and no foreclosure sale took place.
¶ 6 The Deed of Trust contained provisions requiring notice to Puryer prior to accelerating the Loan if default was not cured. The Deed of Trust provided the following:
Acceleration Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument ... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a ***365 default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.
The Deed of Trust then provided that if the lender invokes the power of sale, lender must notify the trustee and then the trustee or lender can record a notice of sale. It is undisputed that no notice was provided by Lenders to Puryer as required by the Deed of Trust. The Deed of Trust provided the maturity date as April 1, 2036.
¶ 7 Initially, Puryer, appearing pro se, filed a complaint on October 27, 2016. On March 3, 2017, Puryer filed an Amended Complaint. In the Amended Complaint, Puryer alleged six *109 causes of action against Lenders. These causes of action included: (1) declaratory judgment; (2) breach of contract and breach of the implied covenant of good faith and fair dealing; (3) violation of the Fair Debt Collection Practices Act (FDCPA); (4) violation of the Montana Consumer Protection Act (MCPA); (5) negligent or intentional infliction of emotional distress; and (6) lack of authority to foreclose. On March 20, 2017, Lenders moved to dismiss the Amended Complaint pursuant to M. R. Civ. P. 12(b)(6).
¶ 8 On May 25, 2017, the District Court granted Lenders' motion to dismiss. The District Court determined the following: (1) declaratory judgment is improper because the Notices of Sale did not accelerate the maturity date; therefore, the statute of limitations was not triggered by the first Notice of Sale; (2) securitization of the Loan does not invalidate the Deed of Trust; (3) Puryer did not suffer any actual damages from any breach of contract; (4) no special relationship existed to assert a breach of good faith and fair dealing with the named parties,[2] (5) Lenders do not meet the definition of a debt collector under the FDCPA; (6) litigation costs are not sufficient to satisfy the ascertainable loss element under the MCPA; (7) no factual basis existed for a claim of negligent and/or intentional infliction of ***366 emotional distress; and (8) lack of authority to foreclose is not a recognized claim.[3] Puryer timely appeals.
STANDARD OF REVIEW
¶ 9 We review a district court's ruling on a motion to dismiss de novo, using the standards set forth in M. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief. A district court's determination that a complaint has failed to state a claim for which relief can be granted is a conclusion of law which we review for correctness. Victory Ins. Co. v. Mont. State Fund , 2015 MT 82, ¶ 11, 378 Mont. 388, 344 P.3d 977 (citations omitted).
¶ 10 A motion to dismiss under M. R. Civ. P. 12(b)(6) has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. Dismissal is proper under M. R. Civ. P. 12(b)(6) if the plaintiff would not be entitled to relief based on any set of facts that could be proven to support the claim. Doty v. Mont. Comm'r of Political Practices , 2007 MT 341, ¶ 9, 340 Mont. 276, 173 P.3d 700 (citations omitted).
DISCUSSION
¶ 11 Did the District Court err by granting Lenders' Motion to Dismiss pursuant to M. R. Civ. P. 12(b)(6) ?
¶ 12 An asserted claim is subject to dismissal if, as pled, it is insufficient to state a cognizable claim entitling the claimant to relief. M. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the court must take all well-pled factual assertions as true and view them in the light most favorable to the claimant, drawing all reasonable inferences in favor of the claim. A claim is subject to dismissal only if it either fails to state a cognizable legal theory for relief or states an otherwise valid legal claim but fails to state sufficient facts that, if true, would entitle the claimant to relief under that claim. Anderson v. ReconTrust Co., N.A. , 2017 MT 313, ¶ 8, 390 Mont. 12, 407 P.3d 692 (citations omitted). The liberal notice pleading requirements of M. R. Civ. P. 8(a) and 12(b)(6) do "not go so far to excuse omission of that which is material and necessary in order to entitle relief," and the "complaint must state ***367 something more than *110 facts which, at most, would breed only a suspicion" that the claimant may be entitled to relief. Jones v. Mont. Univ. Sys. , 2007 MT 82, ¶ 42, 337 Mont. 1, 155 P.3d 1247.
A. Declaratory Judgment
¶ 13 Puryer argues the District Court erred in granting Lenders' motion to dismiss. Specifically, Puryer asserts the Notices of Sale accelerated the amount due and constituted a maturity of the entire debt as provided by § 71-1-210, MCA, and thus Lenders had eight years from the first Notice of Sale to enforce the obligation to pay. Puryer maintains the eight-year statute of limitations began to run on July 10, 2008 when she received the first Notice of Sale. Lenders counter the District Court correctly granted their motion to dismiss. Lenders argue, based on the plain language of the Deed of Trust, the Loan was not accelerated and even if the Loan was accelerated the notice of cancellation revoked any acceleration. Thus, the Lenders contend the statute of limitations never began.
¶ 14 The Uniform Declaratory Judgments Act provides a district court with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 27-8-201, MCA. Under Montana law, "a mortgage of real property ... is good against all from the time it is recorded until 8 years after the maturity of the entire debt or obligation secured." Section 71-1-210, MCA. Thus, upon maturity of the entire debt a lender has eight years to enforce the mortgage unless the lender seeks to renew the period of mortgage. Although acceleration of a debt requiring payment of the entire debt may trigger the eight-year statute of limitation pursuant § 71-1-210, MCA, the plain language of the Deed of Trust provides that the Notices of Sale did not accelerate the entire debt.
¶ 15 Acceleration of the debt due under the Deed of Trust was not self-executing. Upon default, the lender was required to give notice to the borrower. The notice must specify (1) the default, (2) the action required to cure the default, (3) a date by which default must be cured, and (4) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust. (Emphasis added.) The plain language of the Deed of Trust does not create a self-executing acceleration clause. See Mont. Solid Waste Constrs. v. Mont. Dept. of Pub. Serv. Reg. , 2007 MT 154, ¶ 24, 338 Mont. 1, 161 P.3d 837 (defining self-executing as "taking effect immediately without the need of any type of implementing action"). Even after providing notice to the borrower, the lender may elect to accelerate the sums secured by invoking the power of sale. We conclude, based on the plain language of the Deed of Trust, that upon ***368 default, an implementing action-providing notice-was required to accelerate Puryer's debt.
¶ 16 Inter alia, the Notices of Sale did not accelerate the entire debt to trigger the eight-year statute of limitations pursuant to § 71-1-210, MCA. The Small Tract Financing Act of Montana, §§ 71-1-301 to -321, MCA, allows the use of trust indentures to finance estates of real property that are smaller than 40 acres. Section 71-1-302, MCA. "When a transfer in trust of an interest in real property is made to secure the performance of the obligation ... a power of sale is conferred upon the trustee to be exercised after a breach of the obligation for which the transfer is security." Section 71-1-304(2), MCA. The Act further provides:
Whenever all or a portion of any obligation secured by a trust indenture has, prior to the maturity date fixed in the obligation, become due or been declared due by reason of a breach or default ... the grantor ... at any time prior to the time fixed by the trustee for the trustee's sale if the power of sale is to be exercised, may pay to the beneficiary or the beneficiary's successor in interest the entire amount then due under the terms of the trust indenture and the obligation secured by the indenture ... other than the portion of the principal that would not then be due if a default had not occurred and cure the existing default.
Section 71-1-312(1), MCA (emphasis added). A Notice of Sale does not cause maturity of the entire debt owed if a borrower, at any *111 point, may cure the default by only paying the amount due at that time, rather than being required to pay the entire loan balance. We determine based on the language of the § 71-1-312(1), MCA, the Notices of Sale did not accelerate the entire debt due. As provided in § 71-1-312(1), MCA, payment of only the amount in arrears reinstates the trust indenture. See Midfirst Bank v. Ranieri , 257 Mont. 312, 319, 848 P.2d 1046, 1050 (1993). Contrary to Puryer's arguments, our decision in Bank of America, N.A., v. Alexander , 2017 MT 31, 386 Mont. 305, 389 P.3d 1020, is not applicable. Therefore, the maturity date remains April 1, 2036, because the Notices of Sale failed to accelerate the entire debt. Accordingly, we conclude the eight-year statute of limitations was not triggered and enforcement of the Deed of Trust is not time-barred.
¶ 17 Moreover, Puryer argued the District Court erred by not considering Puryer's motion for summary judgment on the statute of limitations. Having determined the enforcement of the Deed of Trust is not time-barred pursuant to § 71-1-201, MCA, we conclude the District Court did not err by refusing to consider Puryer's motion for ***369 summary judgment.
B. Breach of Contract and Breaches of the Implied Covenant of Good Faith and Fair Dealing
¶ 18 Puryer argues the District Court erred in dismissing her breach of contract and breaches of the implied covenant of good faith and fair dealing claims. Specifically, Puryer contends she sufficiently pled damages in her breach of contract claim. Puryer also contends her breach of the implied covenant of good faith and fair dealing was properly pled. Puryer lastly argues a "special relationship" existed to move forward with the tortious breach of the implied covenant of good faith and fair dealing claim.
¶ 19 Lenders argue the District Court did not err in dismissing Puryer's breach of contract and breach of the implied covenant of good faith and fair dealing claims as a matter of law. Lenders maintain the breach of contract claim failed to adequately allege actual damages. Lenders further argue Puryer failed to allege a "special relationship" giving rise to a tortious breach of the implied covenant.
¶ 20 A breach of contract is an actionable wrong regardless of whether actual damages stemmed from the breach. Kitchen Krafters v. Eastside Bank , 242 Mont. 155, 163, 789 P.2d 567, 571 (1990), overruled on other grounds , Busta v. Columbus Hosp. Corp. , 276 Mont. 342, 916 P.2d 122 (1996) ; Rickards v. Aultman & Taylor Mach. Co. , 64 Mont. 394, 400, 210 P. 82, 83 (1922) (the law presumes damages if the pleading sets forth facts showing that plaintiff's legal rights have been violated). "A failure to show actual damages and the resulting inference that none were sustained does not defeat the cause of action." Kitchen Krafters , 242 Mont. at 163, 789 P.2d at 571 (citing Sutherland on Damages Vol. I § 11 (3rd Edition 1903) ). Therefore, an action for breach of contract does not require that the plaintiff sustain any damages. Kitchen Krafters , 242 Mont. at 163, 789 P.2d at 571 (citing Jacobs Sulton Co. v. Union Mercantile Co. , 17 Mont. 61, 42 P. 109 (1895) ). In the absence of proof of actual damages recovery may be for nominal damages. Rickards , 64 Mont. at 400, 210 P. at 83 ; Restatement (Second) of Contracts § 346 (1981).
¶ 21 Puryer's breach of contract claim alleged Lenders breached the Deed of Trust by failing to give Puryer the required notice under the Deed of Trust prior to initiating non-judicial foreclosure. The District Court dismissed Puryer's breach of contract claim because she failed to allege actual damages. The District Court focused its dismissal on Puryer's failure to allege any monetary or property loss stemming from the breach of contract-failure to give notice. However, based on ***370 established Montana law, a failure to plead actual damages for a breach of contract claim does not defeat the cause of action. Taking the allegations of the Amended Complaint as true, Puryer has sufficiently stated a claim for breach of contract. As such, the District Court incorrectly dismissed Puryer's breach of contract claim.
¶ 22 Puryer also claimed Lenders breached the implied covenant of good faith and fair dealing. Puryer's Amended Complaint included causes of action for breach of the implied *112 covenant of good faith and fair dealing based in contract and based on the "special relationship" criteria giving rise to a tort. For the reasons stated below, Puryer's contractual and tortious breach of the implied covenant were improperly dismissed.
¶ 23 "Every contract, regardless of type, contains an implied covenant of good faith and fair dealing." Story v. Bozeman , 242 Mont. 436, 450, 791 P.2d 767, 775 (1990), overruled on other grounds, Arrowhead Sch. Dist. No. 75 v. Klyap , 2003 MT 294, 318 Mont. 103, 79 P.3d 250. A covenant of good faith requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Section 28-1-211, MCA. "In a great majority of ordinary contracts, a breach of the implied covenant is only a breach of the contract and only contract damages are due." Story , 242 Mont. at 450, 791 P.2d at 775. However, a claim may be brought for tortious breach of the implied covenant where a "special relationship" exists between the parties. Story , 242 Mont. at 451, 791 P.2d at 776. To establish a "special relationship" the following five elements must be present:
(1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.
Story , 242 Mont. at 451, 791 P.2d at 776.
¶ 24 The District Court failed to recognize Puryer's claim for contractual breach of the implied covenant. Puryer's Amended Complaint alleged Lenders "breached the covenant of good faith and fair dealing in their conduct with [Puryer] by not acting honestly and by failing to observe reasonable commercial standards of fair dealing in the trade." Puryer alleged Lenders "attempted to deprive [her] from ***371 receiving the benefit of the contract by attempting to foreclose on the mortgage" and not providing the required notice setting forth her ability to cure the default. Construing the complaint in the light most favorable to Puryer and taking all allegations as true, we determine that Puryer has sufficiently pled a claim for contractual breach of the implied covenant to survive a 12(b)(6) motion to dismiss.
¶ 25 Further, the District Court determined, as a matter of law Puryer failed to allege that a "special relationship" existed giving rise to a tortious breach of the implied covenant. The District Court incorrectly conflates the "special relationship" required under Story with the "special circumstances" that would give rise to a fiduciary duty. Primarily, the District Court relies on Morrow v. Bank of America, N.A. , 2014 MT 117, ¶¶ 34-35, 375 Mont. 38, 324 P.3d 1167, where we held that a bank normally does not owe its customer a fiduciary duty unless special circumstances arise that would show that the bank went beyond its ordinary role. Furthermore, the District Court made no analysis regarding whether a "special relationship" as set forth in Story existed under the facts of this case. Thus, the District Court's analysis to dismiss Puryer's tortious breach of the implied covenant is amiss.
¶ 26 Puryer's Amended Complaint alleged a contract existed and based on the Lenders' conduct they breached the implied covenant by not acting honestly and failing to observe reasonable commercial standards of fair dealing. Further, Puryer's Amended Complaint alleged the contract at issue-Deed of Trust-which financed Puryer's personal residence creates a special relationship as required by Story . Taking the allegations as true, Puryer has sufficiently pled both a contractual breach of the implied covenant and a tortious breach of the implied covenant in her Amended Complaint to survive a 12(b)(6) motion to dismiss. A determination of whether a special relationship actually exists giving rise to a tortious breach of the implied covenant claim is more appropriate for summary judgment if the facts are undisputed or at *113 trial. Story , 242 Mont. at 451, 791 P.2d at 776.
C. Fair Debt Collections Practices Act
¶ 27 Puryer argues the District Court erred in dismissing her FDCPA claim. Puryer maintains she set forth a valid basis for her FDCPA claim for Lenders failure to comply with the Deed of Trust's notice requirement. Lenders, however, argue the District Court correctly dismissed Puryer's FDCPA claim as a matter of law. Lenders maintain Puryer's FDCPA claim failed because Lenders are not "debt collectors" under the FDCPA.
¶ 28 The Ninth Circuit Court of Appeals held, generally, that ***372 enforcement of a security interest does not constitute debt collection activity under the FDCPA. Ho v. ReconTrust Co. N.A. , 858 F.3d 568, 571-72 (9th Cir. 2017) ("the object of a non-judicial foreclosure is to retake and resell the security, not to collect money .... Thus, actions taken to facilitate a non-judicial foreclosure ... are not attempts to collect 'debt' as defined by the FDCPA"); Dowers v. Nationstar Mortg., LLC , 852 F.3d 964, 969 (9th Cir. 2017) (a party enforcing a security interest under § 1692e is not engaging in debt collection and were not acting as debt collectors under the FDCPA).
¶ 29 However, the definition of debt collector under § 1692f(6) includes a person enforcing a security interest. Dowers , 852 F.3d at 971. Section 1692f(6) states:
Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if-(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.
15 U.S.C. § 1692f(6). The Dowers Court concluded that § 1692f(6)"regulates nonjudicial foreclosure activity." Dowers , 852 F.3d at 971. The Court further determined it was error to dismiss plaintiff's § 1692f claim because "Plaintiffs alleged that Nationstar threatened to take non-judicial action to dispossess Plaintiffs of their home without a legal ability to do so. Such conduct is exactly what Section 1692f(6) protects borrowers against." Dowers , 852 F.3d at 971.
¶ 30 Puryer's Amended Complaint alleged violations under 15 U.S.C. §§ 1692e and 1692f of the FDCPA. Here, the District Court correctly dismissed Puryer's FDCPA § 1692e violation because Lenders do not qualify as debt collectors since Puryer's alleged violation involved non-judicial foreclosure. Dowers , 852 F.3d at 969-70. However, Puryer's claim pursuant to § 1692f was improperly dismissed. Puryer's asserted § 1692f violation is based on Lenders conduct of threatening a non-judicial foreclosure by sending repeated Notices of Sale. An alleged § 1692f violation includes threatening a consumer with non-judicial foreclosure. Dowers , 852 F.3d at 971. Consequently, the District Court erred in dismissing Puryer's alleged § 1692f violation as a matter of law. Therefore, based on Puryer's Amended Complaint, any violations alleged under the FDCPA were properly dismissed except Puryer's alleged § 1692f violation.
¶ 31 The District Court further concluded any FDCPA violations were barred by the statute of limitations pursuant to 15 U.S.C. § 1692k(d).
***373 Section 1692k(d) states that any claim alleged under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The District Court determined Puryer was aware of the violations as early as of July 10, 2008, and had one year from that date to bring her FDCPA violations. Accordingly, the District Court explained that since Puryer did not file her complaint until October 27, 2016, she was time-barred by the one-year statute of limitations pursuant to § 1692k. We disagree.
¶ 32 The plain language of § 1692k(d) states Puryer must bring a FDCPA violation "within one year from the date on which the violation occurs. " (Emphasis added.) Puryer alleged nine separate FDCPA violations with the final violation-Notice of Sale-occurring on July 5, 2016. Puryer initiated suit within the one-year statute of limitations of this last alleged violation. Thus, we determine Puryer *114 is not barred by § 1692k(d) with regards to the alleged violation occurring on July 5, 2016. We conclude the District Court erred in dismissing the entirety of Puryer's FDCPA claim as pled in her Amended Complaint. Viewing the complaint in the light most favorable to Puryer, she has sufficiently pled a violation occurring on July 5, 2016 under § 1692f of the FDCPA. Any other FDCPA violations alleged by Puryer were properly dismissed by the District Court as a matter of law.
D. Montana Consumer Protection Act
¶ 33 Puryer also alleged violations under the MCPA. Similar to Puryer's FDCPA claim, Puryer argues the District Court erred in dismissing the MCPA claim. Puryer maintains she set forth a valid basis for her MCPA claim based on our decision in Jacobson v. Bayview Loan Servicing, LLC , 2016 MT 101, 383 Mont. 257, 371 P.3d 397. Lenders contend the District Court correctly dismissed Puryer's MCPA claim because she failed to allege any factual allegations that would give rise to a claim under the MCPA. Lenders further argue Puryer's MCPA claim failed to allege any "ascertainable loss" stemming from Lenders' conduct.
¶ 34 The MCPA declares "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 30-14-103, MCA. The MCPA applies to banks engaged in consumer lending and the collection and servicing of loans. Morrow , ¶ 67 (citing Baird v. Norwest Bank , 255 Mont. 317, 328, 843 P.2d 327, 334 (1992) ). A consumer may sue under the act if he or she has suffered "any ascertainable loss of money or property" as the result of an unfair practice. Section 30-14-133, MCA. A violation of the FDCPA can constitute grounds for a violation under the MCPA.
***374 Jacobson , ¶ 48 (citing Morrow , ¶¶ 67-69 ).
¶ 35 First, the District Court determined the factual allegations alleged by Puryer failed to give rise to a MCPA violation. The District Court relied on our decision in Jacobson . In Jacobson , the Jacobsons alleged several violations under the MCPA regarding the nonjudicial foreclosure of their home. Jacobson , ¶ 49. In particular, the Jacobsons alleged the loan servicer violated provisions of the Trust Indenture § 22(c) and § 71-1-306(2), MCA. Jacobson , ¶¶ 5, 6, 49. The Trust Indenture § 22 provided the following:
Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 [transfer of property] unless Applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration.
...
If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.
Jacobson , ¶ 5. This language is nearly identical to Puryer's Deed of Trust § 22. While we recognize the Jacobsons alleged several other MCPA violations, this Court stated the lender "violated provisions of the Trust Indenture § 22(c) and § 71-1-306(2), MCA. These violations ... clearly constitute violations of Montana Law [under the MCPA] while also in violation of the FDCPA." Jacobson , ¶ 49. Similarly, Puryer's Amended Complaint specifically alleged "the Defendants' violations of the trust indenture provision, § 22 (C), and § 71-1-306(2), MCA, are also violations of the MCPA." Further, Lenders do not dispute notice was not provided to Puryer as provided in the Deed of Trust § 22. While Jacobson is distinguishable with regards to the gravity of MCPA violations alleged, it clearly indicates Puryer has sufficiently pled a claim for a MCPA violation. Therefore, we cannot conclude, as the District Court did, that Puryer's *115 factual allegations could not give rise to a violation under the MCPA.
¶ 36 Furthermore, the District Court dismissed Puryer's MCPA
***375 claim because she failed to allege any ascertainable loss of money and property as a result of the Lenders' unfair practices. We have rejected Lenders' argument that under the MCPA "ascertainable loss of money and property" requires a showing of "actual damages" such as a foreclosure sale. Jacobson , ¶ 56. In Jacobson , we determined that "costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit, [and] never received a [m]odification" were sufficient to establish a pecuniary loss. Jacobson , ¶ 57 (quoting Wigod v. Wells Fargo Bank, N.A. , 673 F.3d 547 (7th Cir. 2012) ). Puryer's MCPA claim alleged damages of cost and fees, attorney fees, and ascertainable loss of money and property by executing a legal proceeding to stop Lenders' improper foreclosure of her property. Therefore, Puryer sufficiently pled damages recognized by this Court, even if no foreclosure sale took place, to overcome a 12(b)(6) motion to dismiss. Taking Puryer's allegations as true, we conclude she has sufficiently pled a violation under the MCPA.
E. Negligent or Intentional Infliction of Emotional Distress
¶ 37 Puryer argues her infliction of emotional distress claim survives a motion to dismiss because it falls under the continuing tort doctrine. In response, Lenders argue Puryer's infliction of emotional distress claim was insufficiently pled. The District Court dismissed Puryer's claim for negligent or intentional infliction of emotional distress because Puryer failed to articulate any basis for an emotional distress claim and Lenders cannot be held liable for the conduct of others based on joint and several liability. We agree with Lenders.
¶ 38 Under Montana law, a plaintiff's independent or "stand alone" claim for intentional or negligent infliction of emotional distress can be maintained only upon a showing the plaintiff suffered "serious" or "severe" emotional distress as the reasonably foreseeable consequence of the defendant's act or omission. Sacco v. High Country Indep. Press , 271 Mont. 209, 237, 896 P.2d 411, 428 (1995). To constitute "serious" or "severe," the emotional distress must be "so severe that no reasonable person could be expected to endure it." Sacco , 271 Mont. at 234, 896 P.2d at 426. The requirement that the emotional distress be serious or severe was imposed to alleviate concerns of opening the floodgates to numerous and perhaps even fraudulent claims. Sacco , 271 Mont. at 237, 896 P.2d at 428.
¶ 39 Puryer's Amended Complaint stated "[Lenders'] actions of foreclosing on plaintiff's property have caused Plaintiff to live in fear and suffer serious or severe emotional distress to the extent that it has affected Plaintiff's health." However, Puryer admits she has been in default since November 2007. Puryer further alleged the emotional ***376 distress stems from Lenders' attempts to foreclose upon her home by sending several Notices of Sale. We agree with the District Court that Puryer's Amended Complaint fails to allege any factual allegations sufficient to constitute "serious or severe" emotional distress that "no reasonable person could be expected to endure it." See Feller v. First Interstate Bank , 2013 MT 90, ¶¶ 38-39, 369 Mont. 444, 299 P.3d 338. Therefore, the District Court properly dismissed Puryer's negligent and/or intentional infliction of emotional distress claim.
CONCLUSION
¶ 40 We hold the District Court did not err in dismissing Puryer's declaratory judgment claim as a matter of law. We hold the District Court incorrectly determined Puryer's Amended Complaint failed to state a claim for which relief could be granted under the standards of M. R. Civ. P. 12(b)(6) on her asserted breach of contract, contractual and tortious breach of the implied covenants of good faith and fair dealing, FDCPA, and MCPA claims as set forth above. We further hold the District Court did not error in dismissing Puryer's negligent and/or intentional infliction of emotional distress claim because she failed to state sufficient facts to entitled her to relief on the claim.
¶ 41 Affirmed in part and reversed in part.
We concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
JAMES JEREMIAH SHEA, J.
Justice Jim Rice, concurring and dissenting.
*116 ¶ 42 I concur in the conclusions reached by the Court, except regarding the Fair Debt Collection Act claim. I would affirm the dismissal of that claim.
¶ 43 As the Court notes, recent decisions have clarified that security holders are generally not "debt collectors," and a mortgage is not a "debt," for purposes of the Act. Opinion, ¶¶ 28-29 (citing Dowers v. Nationstar Mortg., LLC , 852 F.3d 964 (9th Cir. 2017) ). A narrow exception to this general rule permits claims against security holders under 15 U.S.C. § 1692f(6), which prohibits taking or threatening to take nonjudicial action to effect dispossession of property if: (A) there is no present right to possession of the property through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession. Consequently, it is incumbent upon a plaintiff asserting a claim against a security holder to clearly allege a violation that falls within § 1692f(6), as all other claims sounding in the Act do not apply. I believe Puryer has failed to do so.
¶ 44 First, the explicit claims made by Puryer under § 1692f(6) in her ***377 Amended Complaint are that the Lenders "failed to provide a date to cure the default, as required by the Note and Deed of Trust, and they failed to comply with the requirements for default procedures in the trust indenture, including but not limited to failing to properly notify Puryer regarding the timing of her right to cure." Puryer asserts these are "false representations of Puryer's rights in violation of 15 USC § 1692e(10), and constitute unfair practices in violation of 15 USC § 1692(f)...." However, these allegations do not fall within the parameters of the claims authorized under § 1692f(6). For purposes of these stated claims, which must find support in other sections of the Act, the Lenders are not debt collectors, and the claims must fail.
¶ 45 Beyond her explicit claims, Puryer generally alleges that her "FDCPA and MCPA claims may be based on the same grounds," but her assertions in this regard are very vague, specifically referencing only that Lenders' actions violated the trust indenture. While the Court states that Puryer has stated a claim under § 1692f(6)"based on Lenders conduct of threatening a non-judicial foreclosure by sending repeated Notices of Sale," Opinion, ¶ 30, my reading of the Amended Complaint reveals no articulation of such a claim. Further, even if such language had been used, it would be insufficient alone to state a claim under § 1692f(6), which would also require an assertion that there was no present right to effect dispossession, no present indication to take possession, or that the property is exempt by law from such dispossession.

HAMP is intended to help homeowners by modifying their monthly mortgage payments.

The District Court recognized a special relationship may have existed between Bank of America and Puryer based on Bank of America's advice to stop making mortgage payments. However, as discussed below, the District Court applied the test for whether a fiduciary duty existed, and not the "special relationship" test for tortious breach of the implied covenant of good faith and fair dealing. Nevertheless, the District Court recognized Puryer's Amended Complaint failed to name Bank of America as a defendant and found Bank of America was no longer a party to the action.

Puryer does not appeal the dismissal of her Lack of Authority to Foreclose claim.