DA 19-0357

FILED

04/14/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0357

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 86

CHERYL BRATTON, individually and on behalf
of a class of similarly situated Montanans,

   Appellants,

 v.

SISTERS OF CHARITY OF LEAVENWORTH
HEALTH SYSTEM, INC. d/b/a SCL HEALTH,

   Appellee.

APPEAL FROM: District Court of the Thirteenth Judicial District,
       In and For the County of Yellowstone, Cause No. DV 18-1609
       Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

      John Heenan, Joe Cook, Heenan & Cook, PLLC, Billings, Montana

      Michael P. Manning, Ritchie Manning Kautz PLLP, Billings, Montana

   For Appellee:

      Robert C. Lukes, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

      Kathryn A. Reilly, Jessica G. Scott, Wheeler Trigg O'Donnell LLP, Denver,
      Colorado

   For Amici Curiae Montana Legal Services, National Consumer Law Center, and
   National Association of Consumer Advocates:

      David K. W. Wilson, Jr., Morrison, Sherwood, Wilson & Deola, PLLP,
      Helena, Montana

      Mark Elliott Budnitz, Bobby Lee Cook, Georgia State University College
      of Law, Atlanta, Georgia

For Amici Montana Bankers Association, American Bankers Association, and Consumer Bankers Association

Kenneth K. Lay, Crowley Fleck, PLLP, Helena, Montana

Submitted on Briefs: February 19, 2020

Decided: April 14, 2020

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Cheryl Bratton (Bratton) appeals an order granting summary judgment in favor of Defendant Sisters of Charity of Leavenworth Health System, Inc. (SCL Health or SCL) on her claims, entered by the Thirteenth Judicial District Court, Yellowstone County. We affirm, and restate the issues as follows:

1. *Did the District Court err by granting SCL Health's motion for summary judgment on Bratton's request for declaratory judgment that SCL violated § 28-1-1002, MCA?*

2. *Did the District Court err by granting SCL Health's motion for summary judgment on Bratton's request for a constructive trust based on unjust enrichment?*

3. *Did the District Court err by granting SCL Health's motion for summary judgment on Bratton's Montana Consumer Protection Act claim?*

4. *Did the District Court err by granting SCL Health's motion for summary judgment on Bratton's "money had and received" claim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In January of 2015, SCL Health began issuing refunds to its patients, for such reasons as overpayment on an account, in the form of prepaid MasterCard debit cards issued through Bank of America (the Patient Refund Card Program or Program). Prior to initiation of the Program, SCL had effectuated patient refunds via bank drafts or checks issued through its internal billing department. This internal process cost SCL approximately $5.00 per check, and involved delay in the issuance of refund checks to patients. SCL implemented the Program to reduce costs, as the cost of issuing prepaid debit cards was approximately $3.50 each, and to provide patients with more timely access to their refunds.

3

¶3 Bratton received services at a SCL Health facility in 2018, and after Bratton's primary health insurer provided payment for those services, SCL billed Bratton for the remaining cost, which Bratton paid. Subsequently, Bratton's secondary insurer also paid the remaining cost. Thus, SCL Health had been overpaid, and owed Bratton a refund in the amount of $12.75, for which it initiated issuance to Bratton of a Patient Refund Card from Bank of America in that amount, in June of 2018. In December of 2018, under similar circumstances, SCL Health had a second Patient Refund Card issued to Bratton, in the amount of $15, bringing the total amount refunded to Bratton through the Program to $27.75.

¶4 Under the Patient Refund Card Program, when a patient is owed a refund, SCL Health transmits the amount, name, and contact information of the patient to Bank of America. Bank of America removes the amount due to the patient from SCL Health's depository account, creates and loads a prepaid debit card, and sends the card to the patient. For fourteen days after the money has been debited from SCL's account, SCL may request that the money be returned to its account and the card unloaded. After fourteen days have passed, SCL can no longer reverse the card transaction.

¶5 Along with the card, Bank of America also sends a short letter, or card carrier, bearing SCL Health's logo to the patient.[1] The letter explains that, upon activating the card, the patient may access her funds in a number of ways without incurring any fee: the

---

[1] It appears from the record that there was an approximately six-month period in which SCL's patients did not receive a letter with the refund cards, but Bratton received letters with her refund cards.

patient may use the card as payment at any vendor who accepts MasterCard; may take the card to any bank that accepts MasterCard and ask for the card to be exchanged for cash; or, may withdraw the money on the card at any Allpoint ATM, including 94 locations in Montana. To activate the card, the patient need only call the Bank of America number provided in the letter and enter the last four digits of their phone number. Although, by activating the card, the patient agrees to Bank of America's terms of service for the card, the patient is not required to open an account with Bank of America.

¶6 The letter provides customer service telephone numbers for both SCL Health and Bank of America. At any time a balance remains on the card, if the patient wishes to receive a check instead of using the card, she may request a check. Although checks may be issued even after the card is activated, a patient does not need to activate the card to request a check. In Montana, as of February 6, 2019, 194 checks were requested via this method and sent to patients for SCL Health refunds. The checks are issued without charge.

¶7 Neither SCL nor Bank of America retain unused funds associated with the Program. The Patient Refund Cards have a three-year expiration date and, after the card expires, the Patient's money remains in the account until the balance becomes eligible for escheatment to the State of Montana after five years, in accordance with Montana's unclaimed property statute. *See* § 70-9-803, MCA.

¶8 Bratton did not incur any fees associated with either of the refund cards she was issued. Bratton's husband activated the first refund card, but the card was not used. Bratton did not activate the second card, request issuance of checks for the cards, use the cards to

5

pay for goods, withdraw the money from the cards at an ATM, or exchange the cards for cash at a bank.

¶9 In October of 2018, Bratton brought this suit against SCL Health, alleging constructive trust, conversion, unjust enrichment, violation of the Montana Consumer Protection Act (MCPA), money had and received, and declaratory judgment and injunctive relief.[2] During her deposition in this case, Bratton made her first request to SCL that the cards be cancelled, and that checks be issued for her refunds. Pursuant to this request, SCL asked Bank of America to issue checks to Bratton for her total refunds, which Bank of America did.

¶10 The parties filed cross motions for summary judgment, and after hearing, the District Court issued an order granting SCL Health's motions for summary judgment and denying Bratton's cross motion for summary judgment. Bratton appeals the dismissal of her claims for declaratory judgment, unjust enrichment and constructive trust, money had and received, and unfair trade practices under the (MCPA). She does not appeal the dismissal of her conversion claim.[3]

---

[2] Bratton also asserted a putative class action in her complaint and, on April 29, 2019, filed a motion for class certification. However, the motion was withdrawn pursuant to stipulation of the parties on June 16, 2019. The issue of class certification is not before the Court in this appeal, and therefore, our holding here is confined to Bratton's case.

[3] The Court granted leave for submission of two amicus briefs in this appeal, one on behalf of the Montana Bankers Association, American Bankers Association, and Consumer Bankers Association (the Banker Amici); and one on behalf of Montana Legal Services, the National Consumer Law Center, and National Association of Consumer Advocates (the Consumer Law Amici). The Court expresses its appreciation to the assistance provided by Amici.

## STANDARD OF REVIEW

¶11 This Court reviews a district court's grant of summary judgment de novo, using the same criteria as the district court. *Graham-Rogers v. Wells Fargo Bank*, N.A., 2019 MT 226, ¶ 12, 397 Mont. 262, 449 P.3d 798 (citations omitted). Therefore, "[s]ummary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Sprunk v. First Bank Sys.*, 252 Mont. 463, 465, 830 P.2d 103, 104 (1992) (citing M. R. Civ. P. 56(c)). It is the moving party's initial burden to establish that no genuine issues of material fact exist. Once the moving party has done so, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Sprunk*, 252 Mont. at 465-66, 830 P.2d at 104. In doing so, the party opposing summary judgment "'must set forth specific facts and cannot rely on speculative, fanciful, or conclusory statements.'" *Sprunk*, 252 Mont. at 466-67, 830 P.2d at 105 (quoting *Simmons v. Jenkins*, 230 Mont. 429, 432, 750 P.2d 1067, 1069 (1988)).

## DISCUSSION

¶12 *1. Did the District Court err by granting SCL Health's motion for summary judgment based on Bratton's request for a declaratory judgment that SCL violated § 28-1-1002, MCA?*

¶13 Bratton asserts the District Court erred by denying her declaratory claim that SCL Health's use of the Patient Refund Card Program violated § 28-1-1002, MCA. She argues SCL Health, by the Program, transferred to Bank of America its obligation to pay debt owed to her. SCL answers that use of the Program does not violate the statute because it does not transfer or otherwise discharge SCL Health's obligation to pay Bratton. Rather,

7

the Program is simply a financial mechanism by which SCL fulfilled its obligation to Bratton.[4]

¶14    Section 28-1-1002, MCA, part of the Field Code, provides, "[t]he burden of an obligation may be transferred with the consent of the party entitled to the benefits, but not otherwise[.]"   When interpreting a statute, this Court looks first to the statute's plain language.  *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898 (citations omitted).  "We construe a statute by reading and interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the legislature."  *Fox*, ¶ 18 (quoting *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003) (internal quotations omitted).  "Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it."  *Mont. Sports Shooting Ass'n*, ¶ 11.

¶15    There is no demonstrated issue of material fact regarding application of the statute to SCL's actions.  Under the statute's plain language, the "burden" at issue here is the money obligation SCL owed to Bratton.  Although Bratton correctly notes that SCL used Bank of America to distribute refund payments to her, the undisputed facts in the record demonstrate that SCL Health did not transfer its obligation, or "burden" of owing money,

---

[4] SCL also argues Bratton did not raise a statutory violation before the District Court and, therefore, the issue is improperly raised on appeal.  However, although Bratton did not frame her declaratory judgment claim in the District Court as primarily based upon the statute, the record reveals the statute was a part of her declaratory judgment argument before the District Court, and that SCL had opportunity to address to the argument below.  Therefore, we conclude Bratton properly preserved this issue for appeal.

to Bank of America. The refund money received by Bratton was debited from SCL Health's bank account, establishing that the payment came from SCL's funds, not Bank of America's. Consistent therewith, the record demonstrates a continuous acknowledgment by SCL Health throughout the process that it remained liable for refunds due Bratton, despite its use of Bank of America to distribute the refunds. Bratton brought this lawsuit against SCL Health, not Bank of America, and SCL never disclaimed liability by asserting Bank of America was the cause of any injuries suffered by Bratton. Although Bratton contends the positions taken by SCL in this litigation incorporate "the notion that SCL Health is not liable for paying Bratton's refund[,]" the record here is otherwise, establishing no attempt by SCL to assert any transfer of the burden of its obligation to Bank of America in violation of the statute.

¶16 The Restatement (Second) of Contracts § 318(1), helps to illustrate the distinction between actions prohibited by § 28-1-1002, MCA, and SCL's actions here. The Restatement explains that, "[a]n obligor can properly delegate *the performance of* his duty to another unless the delegation is contrary to public policy or the terms of his promise." (Emphasis added.) This highlights the difference between delegating one's *duty* and delegating one's *performance* of a duty. Here, SCL fulfilled its duty by transferring its own funds to pay its obligation to Bratton, while delegating the performance of this duty—the actual delivery of the money to Bratton—to Bank of America. The statute's plain language does not prohibit, without consent, a transfer of the performance of an obligation; rather, it is the "burden of [the] obligation" itself that may not be transferred without consent.

9

¶17 The Restatement offers further guidance for the situation here, providing "where payment or offer of payment of money is made a condition of an obligor's duty, payment or offer of payment *in any manner current in the ordinary course of business* satisfies the requirement unless the obligee demands payment in legal tender and gives any extension of time reasonably necessary to procure it." Restatement (Second) of Contracts, § 249 (emphasis added). The District Court concluded that the process SCL Health implemented to refund money owed to Bratton is similar to the authorization of a wire transfer or cashier's check, because the money was debited from SCL's account and then transferred to Bratton using Bank of America's system. While Amici for both parties explain the nuances of such transactions, including how they are like or dislike issuance of a check,[5] we cannot conclude the record here demonstrates either a departure from a "manner current in the ordinary course of business" of these transactions or the imposition of another financial burden upon consumers, here Bratton. And, as noted by the Restatement, accommodation was made here for Bratton, as the obligee, to demand payment in the form of a check.

---

[5] Banker Amici assert the Program and "every feature of the transaction to which [Bratton] objects is, in fact, no different from that what would occur in a check transaction," because "[a] person presenting a check for cashing is *also* obtaining money from a bank, not the party writing the check." (Emphasis in original.) In opposition, the Consumer Law Amici assert the Program differs from other forms of payment because it forces consumers like Bratton to have a relationship with a particular bank. The Consumer Law Amici also argue the debit cards differ from other forms of payment because they are governed by different laws and potentially allow for varying levels of consumer protection. Our decision here is premised upon the record made in this case, particularly, the lack of proof of any disability in the proffered method of payment.

¶18     The cases cited by Bratton in support of her argument are distinguishable.  In *Skinner v. Scholes*, 229 N.W. 114 (N.D. 1930), the plaintiff purchased land from the Scholes Land Company (the Company) on an installment contract that provided the Company would transfer the land in fee simple, "clear of all encumbrances whatever, by good sufficient warranty deed[.]" *Skinner*, 229 N.W. at 115.  Prior to completion of performance, the Company deeded the property to a third party, assigned the contract to that third party, and dissolved.  When preparing to make his final contract payment, plaintiff learned of the deed transfer and contract assignment, and sought to rescind the contract and recover his payments and costs.  *Skinner*, 229 N.W. at 115.  The North Dakota Supreme Court held that the plaintiff could properly rescind the contract because "[t]he plaintiff was entitled to insist upon the terms of the contract and to a deed in conformity therewith."  *Skinner*, 229 N.W. at 116.  It based this conclusion on the contract's terms, which it determined included a condition to convey a covenant against encumbrances, which the third party could not provide to the same extent, because any covenant against encumbrances it made would not "run with the land" under the laws of North Dakota.  Further, the contract between the buyer and the Land Company "did not enable either party to transfer the burden of personal covenants by mere assignment without the consent and agreement of their assignees."  *Skinner*, 229 N.W. at 116-17.  Finally, the North Dakota Supreme Court concluded that, from the contract's language, the parties had not "intended to contract in advance to consent to the transfer of the obligations of the contract" to come within the provisions of § 5782, Comp. Laws 193, allowing for "the burden of an

11

obligation" to be "transferred with the consent of the party entitled to its benefit." *Skinner*, 229 N.W. at 116.

¶19    The holding in *Skinner* was premised on the determination that the plaintiff could not receive the property interest as contracted, because it could not be transferred with the proper covenants. Here, first, the parties did not contract regarding the method of any refund, but, more significantly, Bratton takes issue only with the form or mechanism of the refund. Bratton does not allege she did not receive the value of money owed to her, or demonstrate that she suffered any cost or disability because of the manner in which it was delivered. Bratton acknowledged in her deposition that if the refund had been issued to her in the form of a check, rather than a prepaid debit card, she would have been satisfied. This is distinguishable from *Skinner*, where the plaintiff suffered a concrete injury.

¶20    In *AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal. App. 4th 579, 588 (Cal. Ct. App. 2001), an insurer transferred its obligations under several insurance policies to another insurer. The original insurer then contended that as a result of this transfer, it was "free of any obligation to its California policyholders under the . . . policies it had written. . . . if [the new insurer] is unable to satisfy all those obligations, the owners of the transferred policies will have no recourse against [the original insurer][.]" As explained above, SCL maintained just the opposite, and Bratton's attempt to equate SCL's inability to reverse a transfer from its bank account to a debit card after fourteen days, to the disclaimer of liability by the insurer in *AICCO, Inc.*, is not persuasive. Unlike the insurer in *AICCO, Inc.*, SCL did not contend that, after fourteen days, it no longer owed Bratton the money.

12

Rather, after fourteen days, SCL's funds remained in an account, which would not revert to SCL. Thus, in addition to involving the obligations of an insurer, *AICCO, Inc.*, concerned a disclaimed liability not at issue here.

¶21 We conclude the District Court did not err in holding SCL Health is entitled to summary judgment regarding Bratton's request for a declaration that SCL violated § 28-1-1002, MCA, by refunding the money it owed to her through the Patient Refund Card.

¶22 *2. Did the District Court err by granting SCL Health's motion for summary judgment on Bratton's request for a constructive trust based on unjust enrichment?*

¶23 Bratton argues she is entitled to relief on her claim of unjust enrichment because SCL Health indisputably saved money by implementing the Program, which SCL unjustly retained the benefit of in light of its violation of § 28-1-1002, MCA.[6] SCL Health contends the District Court correctly entered summary judgment in its favor because Bratton "cannot prove that SCL Health unjustly retained the benefit she conferred," as SCL returned the value of her refund to her.

¶24 A constructive trust is a remedy for unjust enrichment and arises under statute "when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." Section 72-38-123, MCA; *Volk v. Goeser*, 2016 MT 61, ¶ 45, 382

---

[6] Bratton pled constructive trust as a separate cause of action. To clarify, our case law provides that a constructive trust is a "*remedy* to rectify the unjust enrichment of a party." *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 39, 368 Mont. 330, 296 P.3d 450 (emphasis added). Thus, Bratton must first prove unjust enrichment in order for a court to consider and invoke the remedy of a constructive trust.

Mont. 382, 367 P.3d 378. Additionally, this Court "has broad discretion afforded by the principles of equity to impose a constructive trust despite lack of any wrongdoing by the person holding the property." *Volk*, ¶ 45 (citing *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 29, 368 Mont. 330, 296 P.3d 450). To succeed on a claim for unjust enrichment, in the context of a constructive trust, the plaintiff must prove three elements: "(1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value." *Volk*, ¶ 45 (quoting *N. Cheyenne Tribe*, ¶ 39).

¶25 To the extent Bratton's unjust enrichment argument is premised upon her allegation that SCL violated § 28-1-1002, MCA, that contention was resolved above in favor of SCL. Beyond that, Bratton correctly states that she conferred a benefit upon SCL Health when she paid for medical services, and subsequently, her secondary insurance also paid SCL for those services. SCL Health does not dispute it had knowledge of its receipt of that benefit. However, it is undisputed on the record that SCL Health did not retain that benefit, because it arranged for and funded the return of the benefit to Bratton. Bratton does not dispute this fact, and while she contends the benefit was returned to her in a manner she did not prefer, she has not provided proof that the subject debit cards were not a valid form of payment. Neither would SCL or Bank of America ultimately retain the benefit of Bratton's money because, even if Bratton chose not to activate the card or request a check,

14

under the Program her money would escheat to the state in accordance with Montana's laws on unclaimed property. Therefore, Bratton has not proven the third element of her unjust enrichment claim, and by extension, the necessity of her request for relief by constructive trust.

¶26 Finally, we are likewise unpersuaded by Bratton's argument that the benefit conferred in this case is the money SCL Health saved by issuing her a prepaid debit card rather than a check. In any event, Bratton eventually requested issuance of her refunds by checks, which were issued to her, and therefore any savings SCL could have obtained under the Program did not occur in her case, eliminating any "benefit conferred."

¶27 We conclude the District Court did not err by holding SCL was entitled to summary judgment on Bratton's unjust enrichment claims, and therefore, was not entitled to the remedy of constructive trust.

¶28 *3. Did the District Court err by granting SCL Health's motion for summary judgment on Bratton's Montana Consumer Protection Act claim?*

¶29 Bratton argues there are issues of material fact regarding whether SCL's Program violated the MCPA, and argues she suffered an ascertainable loss because "it is undisputed she cannot obtain her money from SCL Health . . . and SCL Health has disclaimed all liability for paying it." SCL Health argues the District Court did not err in granting summary judgment in its favor because it found upon the record Bratton did not suffer an ascertainable loss, which is required to bring a claim under the MCPA.

¶30 Section 30-14-103, MCA, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." To

bring a claim under the MCPA, the plaintiff must allege they suffered "any ascertainable loss of money or property, real or personal[.]" Section 30-14-133(1), MCA; *see also Ternes v. State Farm Fire & Cas. Co.*, 2011 MT 156, ¶ 36, 361 Mont. 129, 257 P.3d 352 ("only those individuals who suffer ascertainable damages may bring an individual complaint under the MCPA."); *Morrow v. Bank of Am., N.A.*, 2014 MT 117, ¶ 67, 375 Mont. 38, 324 P.3d 1167 ("[a] consumer may sue under the act if he or she has suffered 'any ascertainable loss of money or property' as the result of an unfair practice."). In applying the terms in the MCPA, the statute is to be "liberally construed." *Baird v. Northwest Bank*, 255 Mont. 317, 327, 843 P.2d 327, 333 (1992). Consistent therewith, we have held an "ascertainable loss of money and property" does not require a showing of "actual damages[.]" *Puryer v. HSBC Bank USA, N.A.*, 2018 MT 124, ¶ 36, 391 Mont. 361, 419 P.3d 105.

¶31 Bratton's claim that SCL Health "disclaimed all liability" for her refunds was resolved under our analysis above. On this record, Bratton did not establish that SCL had transferred its obligation or otherwise disclaimed liability for her refunds. Similarly, while Bratton is not required to show actual damages to support a MCPA claim, she has not established an ascertainable loss. It is undisputed on this record that Bratton received the refunds owed her by SCL, initially by way of the Bank of America prepaid debit cards, and ultimately by issuance of two checks. Bratton admitted she did not read the accompanying letter or terms of service that were issued with the cards, and thus, no deception or ascertainable injury was established by these means. Prior to the litigation, Bratton neither

16

attempted nor was frustrated in a request for issuance of a check in place of her cards, never attempted to use the cards issued to her, and did not attempt to cash or deposit them. Thus, Bratton has not demonstrated any injury in the refund process employed by SCL. Consequently, even though we interpret the MCPA liberally, we cannot conclude on this record that Bratton suffered any ascertainable injury, as is requisite for a claim under the Act.

¶32 We conclude the District Court did not err in concluding SCL Health is entitled to summary judgment on Bratton's MCPA claims. Because we find Bratton was not entitled to bring suit under § 30-14-133(1), MCA, we need not further address Bratton's claims that SCL Health's actions here were deceptive or unfair.

¶33 *4. Did the District Court err by granting SCL Health's motion for summary judgment on Bratton's "money had and received" claim?*

¶34 Bratton contends the District Court erred in granting summary judgment to SCL on her money had and received claim because "it is undisputed that SCL . . . was obligated to return Bratton's overpayment" but "rather than returning the overpayment directly to Bratton, SCL paid it to Bank of America, ceded all control over the funds, and disclaimed any further liability." SCL maintains Bratton's claim for money had and received fails because Bratton received the funds owed to her by SCL Health through the prepaid debit cards. Similarly, the District Court held that "SCL Health paid Bratton the money it owed her[,]" and therefore, Bratton's claim failed.

¶35 Generally, a claim of money had and received is based on the premise that the defendant received money to be paid to the plaintiff, but the defendant did not in fact pay

17

the plaintiff that money. *See, e.g., Donovan v. McDevitt*, 36 Mont. 61, 92 P. 49 (1907); *Olson v. McLean,* 132 Mont. 111, 112, 313 P.2d 1039, 1040 (1957). The cause of action "was invented by the common law judges to obtain relief from the common law procedure which, in many cases of merit, afforded no remedy." *Grady v. Livingston*, 115 Mont. 47, 88-89, 141 P.2d 346, 365-66 (1943) (Adair, J. dissenting). As the District Court noted, Montana's case law has not dealt substantially with money had and received claims in several decades.

¶36 As we have determined above, Bratton received the money owed to her by SCL Health. Additionally, as we have concluded, SCL Health's use of Bank of America to distribute the payments does not equate to SCL Health disclaiming the obligation to refund the money to Bratton. Therefore, the District Court did not err by granting summary judgment to SCL Health on Bratton's money had and received claims.

¶37 Based on the record in Bratton's individual case, we conclude the District Court did not err by granting summary judgment to SCL Health on Bratton's claims, and by denying Bratton's cross motions for summary judgment.

¶38 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

18